In the Matter of George Walter KINGS-WOOD, fdba "What's Going On", Bankrupt.

In the Matter of Gerd KINGSWOOD, Bankrupt.

Nos. 90279, 90280.

United States District Court, C. D. California.

May 22, 1972.

Moneymaker & Wolfson, Los Angeles, Cal., for Bankrupts, petitioners on review.

Joel Mithers, Los Angeles, Cal., for Trustee, respondent on review.

## MEMORANDUM AND ORDER AFFIRMING REFEREE

WESTOVER, District Judge.

George Walter Kingswood, a wage earner, had withheld from his salary by his employer certain sums to apply upon his 1970 income tax. On April 21, 1971 George Walter Kingswood and his wife, Gerd Kingswood, filed petitions in bankruptcy. At the first meeting of creditors on May 12, 1971 Carlyle Michelman qualified as and was appointed Trustee of the property belonging to the Kingswoods (hereinafter Bankrupts). At the first meeting of creditors Bankrupts were handed an order of court requiring that any and all income tax refunds received by Bankrupts be turned over to the Trustee.

In June, 1971 Bankrupts received an income tax refund check in the sum of. $669.10 from the United States Treasury which was duly endorsed by Bankrupts and sent to the Trustee. On December 27, 1971 a check for income tax refund from the State of New York, in the sum of $40.31, was delivered to Bankrupts, was duly endorsed by them and forwarded to the Trustee in bankruptcy.

On February 16, 1972 Bankrupts filed a petition to reclaim the money in the possession of Trustee derived from the income tax refund checks, claiming that the checks or the funds derived therefrom were not property within the meaning of § 70 of the Bankruptcy Act (11 U.S.C. § 110).

The question whether income tax refund checks belong to the Trustee or to the bankrupt has been before the bankruptcy courts for many years. Senior District Judge Weinberger of the Southern District of California in 1962 ruled, In re Goodson, 208 F.Supp. 837 that the bankrupt's interest in the fund created by withholding from his wages for tax purposes was property that he could assign prior to filing his petition in bankruptcy, and that the referee's award to the Trustee of the portion attributable to the bankrupt's withholding prior to bankruptcy was correct.

Referee Moriarty, before whom the proceeding now on review was held, has written an excellent memorandum of decision on Bankrupts' application to reclaim the income tax refund. The Referee points out that the bankruptcy courts have long recognized the assignability of income tax refunds between bankrupt and his counsel, and the Referee concludes that the income tax refunds due Bankrupts in this case and turned over to the Trustee is property within § 70a(5) of the Bankruptcy Act (11 U.S. C. § 110a(5)).

In a recent case—In re Jones, 337 F. Supp. 620—United States District Judge Larson of Minnesota ruled that the decision of the Referee in bankruptcy that the tax refund constituted property within § 70a(5) of the Bankruptcy Act has a rational basis in law.

■ Honorable Albert C. Wollenberg of the Northern District of California has ruled that income tax refunds are not property within the meaning of § 70a(5) of the Bankruptcy Act. In re Cedor, 337 F.Supp. 1103. However, we are inclined to follow the reasoning and ruling of Judge Weinberger and Judge Larson; and we affirm Referee Moriarty in his finding that income tax refunds due to the Bankrupts are property within § 70a(5) of the Bankruptcy Act (11 U.S.C. § 110a(5)), and that said refund checks and the money realized therefrom belong to the Trustee.

The United States Court of Appeals for the Sixth Circuit in a case decided and filed on April 26, 1972, less than a month ago, held that regular wages earned before bankruptcy are sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that they should be regarded as property, under § 70a(5) of the Bank-

ruptcy Act, which passes to the Trustee. Aveni, Jr. v. Richman, Trustee, etc., Sixth Circuit Court of Appeals, 458 F.2d 972.

■ Bankrupts herein contend that retention by the Trustee of any portion of the Bankrupts' tax refund would constitute a garnishment under 15 U.S.C. § 1672(c) and would be in violation of the statute in that the Trustee would be allowed to exceed the maximum garnishment permitted. The bankrupt in In re Cedor, supra, moved to recover at least a portion of the tax refund sum held by the Trustee and, upon denial of the motion by the referee, sought review in the District Court. Judge Wollenberg reversed the referee.

Referee Moriarty found in his Memorandum of Decision that provisions of the Consumers Credit Protection Act have no application to the issues in this case. With that finding this Court agrees. Because frequent reference has been made herein to Referee Moriarty's Memorandum of Decision, a copy thereof is appended hereto and made a part of this Memorandum and Order as if herein fully set forth.

It is ordered that the Referee is affirmed in his Findings filed March 28, 1972 that the income tax refunds due Bankrupts and turned over to the Trustee are property within § 70a(5) of the Bankruptcy Act and that said property is not exempt property under the Consumers Credit Protection Act (15 U.S.C. § 1671 et seq.) and is affirmed in his Order pursuant thereto, dated March 30, 1972.

## APPENDIX

### MEMORANDUM OF DECISION ON BANKRUPT'S APPLICATION TO RECLAIM PROPERTY (INCOME TAX REFUND)

The above-captioned bankruptcy proceedings were filed on April 21, 1971 and the First Meeting of Creditors was set for May 12, 1971. During the examination of the bankrupts it was determined that they had filed a joint federal tax return for the calendar tax year of 1970 and were entitled to a tax refund of approximately $700.00. Each bankrupt was then served with a tax order directing them to turn over their tax refund to the Trustee.

This matter is before the Court on an application of the bankrupts to reclaim their 1970 federal tax refund.

During the administration of these estates the Trustee liquidated the non-exempt assets and in his Final Report and Account filed December 30, 1971 and Supplemental Report filed January 24, 1972 reported the following receipts:

| | |
|---|---:|
| Rent and Sale of Real Property | $1,100.00 |
| Stock Dividend | 1.66 |
| 1970 Federal Tax Refund | 669.10 |
| New York State Tax Refund | 40.31 |
| | $1,811.07 |

The Trustee reported miscellaneous administrative expenses of $69.45 with a balance on hand of $1,741.62.

Seven (7) creditors filed claims in these estates. One secured claim in the sum of $3,941.45 was extinguished with the sale of the above-mentioned real property. The remaining six (6) claimants whose claims total $4,752.98 are either personal obligations of the bankrupts or obligations of the business formerly operated by the husband.

Notice of the Final Meeting of Creditors was mailed to all creditors on February 7, 1972 setting the hearing on the Trustee's report for February 24, 1972. On February 16, 1972 the Application to Reclaim Property was filed. The Final Meeting has been deferred until the bankrupt's application to reclaim can be resolved.

The filing of the Petition to Reclaim was precipitated by an opinion of the

United States District Court for the Northern District of California filed on January 20, 1972 in two (2) bankruptcy matters. These matters involved Michael W. Cedor and Clyde R. Jones and will be referred to hereinafter as "Cedor". In Cedor the Court relying on Lines v. Frederick, (1970) 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 and the Consumers Credit Protection Act of 1968, 15 U.S.C. § 1601 et seq., sometimes referred to as "Truth in Lending", held that a tax refund due a bankrupt was not "property" under the provisions of Section 70a(5) of the Bankruptcy Act (11 U.S.C. § 110a(5)). The Cedor decision will be more fully discussed below.

Hearing on the bankrupts' application to reclaim was held on March 17, 1972. Because of the widespread interest in the subject matter and its effect on bankruptcy administration in general three (3) law firms who specialize in bankruptcy matters petitioned this Court to appear Amicus Curiae. The Court granted each petition with an appropriate order. One law firm appeared in support of the bankrupt's position and two appeared in opposition. Sworn testimony was taken of the bankrupt George W. Kingswood and the Trustee Carlyle Michelman. Mr. Kingswood testified that during the tax year of 1970 he was a salaried employee and was paid on a bi-weekly basis. While the bankrupt did not have with him a copy of his 1970 federal tax return he estimated his gross income to be approximately $18,000.00. His wife during the tax year of 1970 had an income of approximately $300.00. He further testified that he did not claim any loss carry-back from his prior business failure in computing his tax liability. Mr. Michelman testified as to the information contained in his Final Report and Account which information was set forth above.

As noted above the bankrupt did not bring to Court a copy of 1970 federal income tax return. Counsel stipulated that a copy of said return when delivered to the Court could be admitted as Exhibit No. 1. On March 20, 1972, Counsel for the bankrupt did deliver to the Court a copy of the 1970 federal income tax return and said return has been marked Exhibit No. 1, and admitted into evidence.

The 1970 tax return discloses an adjusted gross income of $17,890.71. Deductions including interest on mortgages, taxes and others totaled $3,762.-44. The computed tax was $2,091.74. Withholding including excess F.I.C.A. payments totaled $2,769.49. Thus the bankrupt claimed a refund of $677.75. The actual refund check received and turned over to the trustee was in the amount of $669.10. On the average the amount withheld from the bankrupt's bi-weekly pay check was approximately $107.00.

In Cedor the original pleading was captioned Motion For Order to Return Exempt Property. The exemption is claimed under 15 U.S.C. § 1673 et seq. which is part of the Consumers Credit Protection Act of 1968. This Court is not sure how 15 U.S.C. § 1673 et seq. has any application to the issue before this Court. The writer of this Memorandum was one of four (4) Referees in Bankruptcy called to Washington, D. C. in August, 1967 to testify in support of what later became Title III, the garnishment provisions of the Consumers Credit Protection Act. This Court has had more than an academic interest in developments under Title III since it became effective on July 1, 1970. Title III is now codified in the U.S.C.A. as Subchapter II starting at Section 1671.

The heading of Subchapter II is "Restrictions on Garnishment". The entire thrust of this legislation is to control and restrict certain methods a creditor may use in reaching the wages of a debtor. Only by a play on words can such legislation be termed an Exemption Statute. In a lengthy and well reasoned opinion in Hodgson v. Cleveland Munici-

pal Court, (N.D. Ohio E.D.1971) 326 F. Supp. 419 the Court set out in detail the purposes of the legislation and its method of application.

Throughout the statute the term disposable earnings is used and 15 U.S.C. § 1673 sets forth the limitations on the amount or percentage of disposable earnings that can be reached by a creditor. Disposable earnings are those earnings for a given pay period to which the employee is entitled after all statutory deductions, such as tax withholdings and F.I.C.A., are made.

First the Court must decide whether a tax refund is disposable earnings within the statute. At the time the withholding tax was withheld it could not by statute be classified as disposable earnings. Since the amount withheld by the employer for taxes of the employee had lost its status as wages it became merely a potential claim for a tax refund. Such monies withheld cannot logically reassume the character of wages after the employer pays such monies to the government. In re Rosner (E.D.Pa.1949) CCH ¶ 56,556.

Assuming arguendo that 15 U.S.C. § 1673 applies then the formula used in Cedor is incorrect. It appears that the Trustee sought to apply the garnishment provision to the entire sum withheld over the taxable year. In Hodgson the Court makes it very clear that the amount that can be reached is limited to that portion of the disposable income due the employee for his normal pay period then payable and cannot be used on an accumulated basis.

In the matter before this Court the bankrupt received and spent his disposable earnings. The last pay period which produced the now disputed funds occurred approximately 3½ months before the filing of these bankruptcy proceedings. Even if by some magic the disposed earnings, withholding, could be reconstituted as disposable earnings could a garnishment reach earnings paid by the employer 7 pay periods prior to

bankruptcy. Clearly this Court believes the answer must be in the negative.

Assuming for a moment that the bankrupts herein had filed their bankruptcy on December 30, 1970 and that the husband received his bi-weekly pay check on December 31, 1970 as noted above the withholding on the bi-weekly earnings would be $107. If the provisions of the Consumers Credit Protection Act are to be followed it appears that the proper application of the statute would produce a far different result than that set forth in Cedor. Rarely will the amount withheld exceed the 25 percent which a creditor may reach by garnishment. The ratio of $107. to $2769.49 the total amount withheld, produces a factor of slightly less than 4 percent applying this percentage to the total refund received ($669.10) results in a sum of $26.76 and this appears to be the total amount to which the trustee and the bankrupt estate would be entitled to from the tax refund. If this amount were brought into the estate the minimum charge of $5.00 for the Referee's Salary and Expense Fund and any fees due the reporter would have to be deducted from such amount leaving the estate with no more than $15.00. The paper work necessary to bring such a de minimis sum into the estate would be an exercise in futility.

In Cedor the problem is aggravated by the practice of pro-rating. Such a method of determining the right of the Trustee and the bankrupt when bankruptcy occurs before the end of the tax year has been approved by the Courts. In re Goodson (S.D.Calif.1962), 208 F. Supp. 837; Segal v. Rochelle, (1966) 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428. If pro-rating is to be used then a simple mathematical formula can be used without resort to the provisions of 15 U.S.C. § 1673 et seq. In an unreported case arising in this District in 1964 the Honorable E. Avery Crary of our Court In the Matters of Taylor No. 163,948 EC and No. 163,949 EC, suggested a ratio between the amount with-

held prior to bankruptcy and that withheld subsequent to bankruptcy as it applied to the total of the refund. In the great majority of cases this formula would be accurate and fair. If the bankrupt had received a steady income over the entire taxable year then the Trustee could use a formula using the income earned prior and subsequent to bankruptcy.

In the matter before this Court the problem of pro-rating is not present since the bankruptcy occurred on April 21, 1971 at a time when the tax return for the tax year of 1970 had been filed and the bankrupts were awaiting their refund. It is expected that pro-rating will be used more frequently for the tax year of 1972 for the reason that the basic amounts withheld have been increased. Thus it is reasonable to project that more and larger tax refunds will be received by persons coming into the Bankruptcy Courts.

The Court in Cedor seemed confused by the provisions of 15 U.S.C. § 1673 (b) (2) which permits the Bankruptcy Court to order the debtor in a Chapter XIII proceeding or the debtor's employers to turn over to the trustee an amount exceeding 25 percent of the disposal earnings. First 15 U.S.C. § 1673 (b) (2) has no application to the issues before this Court. Secondly, the Congress recognized that without the exception a debtor could not pay into the Court sufficient funds so that the Debtors Plan under Chapter XIII could be concluded within the statutory period by the payment of a regular and meaningful dividend to all creditors included in the plan.

We next come to the question as to whether a tax refund is "property". Section 70 of the Bankruptcy Act (11 U.S.C. § 110) deals with the title to property of the bankrupt upon the filing of a bankruptcy proceeding. The pertinent part of Section 70, sub. (a) is as follows:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualifications, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . . . . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered: Provided, That rights of action ex delicto for libel, slander, injuries to the person of the bankrupt or of a relative, whether or not resulting in death, seduction, and criminal conversation shall not vest in the trustee unless by the law of the State such rights of action are subject to attachment, execution, garnishment, sequestration or other judicial process. . . . ."

In Cedor the Court expanded the ruling in Lines v. Frederick, supra, which dealt with vacation pay to hold that a tax refund was not property under Section 70 of the Bankruptcy Act. This Court believes that the attempt to apply the rationale of Lines to an income tax refund is an error. At page 19 of 400 U.S., at page 113 of 91 S.Ct. of Lines the Court quoted with approval from Segal v. Rochelle, supra.

" '[t]he main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.' But we pointed out that ' "[i]t is impossible to give any categorical definition to the word 'property,' nor can we attach to it in certain relations the limitations which would be attached to it in others." '

"The most important consideration limiting the breadth of the definition of 'property' lies in the basic purpose of the Bankruptcy Act to give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act.' Local Loan Co. v. Hunt, 292 U.S. 234, 244–245, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (citations omitted)."

and at page 20, 91 S.Ct. at page 114:

". . . The Court looked to the proposes of the Act and concluded that the tax refund claim was 'sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as "property" under § 70a(5).' "

The Bankruptcy Courts have long recognized the assignability of income tax refunds between the bankrupt and his counsel. The Assignment of Claims Statute, 41 U.S.C. § 15 is no bar to an assignment by the bankrupt of his income tax refund. Under California Law an income tax refund has been held to be a general intangible and no financing statement is necessary under Section 9302 of the California Commercial Code. In the Matter of Jan E. Ljoshein, (1967) Unreported Case Central District of California.

Prior to Cedor the same problem here present was before the United States District Court for the District of Minnesota, Fourth Division. There In the Matter of Terry Eugene Jones, Unreported Decision, (March 29, 1971), the Court held that the rationale of Lines v. Frederick did not apply to income tax refunds and that the refund was proper-ty which passed to the Trustee under Section 70a(5) of the Bankruptcy Act. On appeal the Court of Appeals for the Eighth Circuit by an Order dated May 14, 1971, declined the appeal and the Supreme Court of the United States denied Certiorari on January 17, 1972, 404 U.S. 1040, 92 S.Ct. 719, 30 L.Ed.2d 732. In Cedor the Court of Appeals for the Ninth Circuit on February 29, 1972 issued the following order:

"Leave to appeal the order of the District Court involving less than Five Hundred Dollars ($500.) pursuant to Sec. 24(a) of the Bankruptcy Act, 11 U.S.C. 347(a) is denied. The question presented can, we feel await a more substantial case for its determination."

On the basis of the above authorities and the Court's understanding of Lines v. Frederick, supra, it is the opinion of this Court that the income tax refund is property under Section 70a(5) of the Bankruptcy Act and the Trustee is entitled to administer the proceeds thereof with the other assets of these estates. In finding the asset in question to be property, it is the opinion of this Court that the provisions of the Consumers Credit Protection Act has no application to the issues before this court.

The decision of the Ninth Circuit in Frederick v. Lines (1970) 425 F.2d 215 and the Supreme Court's decision in Lines v. Frederick, supra have been the subject of some editorial criticism. This Court believes that some of this criticism is misdirected. Maybe the Trustee is the one who should be censured. Perhaps he was not aware of the admonition given in the case of In re McGrath Mfg. Co. of Omaha (D.C.Neb.1951) 95 F.Supp. 825 at page 829 the Court stated:

"We must remember that the Bankruptcy Act is designated an 'act for the relief of debtors' and, inferentially, not an act for the relief of attorneys and court officers. In re Wayne Pump Co., D.C., 9 F.Supp. 940, 942."

It has long been the general practice in the Los Angeles area that our Trustees are not permitted to claim any tax refund unless it exceeds $150. A refund of any lesser amount will rarely benefit the bankrupt's creditors. Judge Hufstedler in Frederick at page 217 of 425 F.2d clearly stated the problem when she said:

" . . . . Instead, such funds when, if ever, received by the employee would usually be consumed by the expenses of administration incurred to keep the estate open awaiting the employee's vacation or his unemployment . . . ."

Perhaps we in the Central District of California occupy a rather unique position in the operations of our Bankruptcy Courts. Of the approximately thirty (30) persons who regularly serve our Courts as trustees in Los Angeles all but two (2) are attorneys licensed to practice law in California. Thus, their service to the Courts represents only a part of their productive professional careers. This Court is not unmindful of the economic problems facing the Courts in obtaining qualified trustees in a non-metropolitan area. But this fact is not relevant to the issues before the Court.

## CONCLUSION

It is the opinion of this Court that (1) the income tax refund due the bankrupts herein and turned over to the trustee is property within Section 70a(5) of the Bankruptcy Act (11 U.S. C. § 110a[5]); (2) said property is not exempt property under the Consumers Credit Protection Act (15 U.S.C. § 1671 et seq.); (3) if it is ultimately held that the tax refund is not property of the estate then 15 U.S.C. § 1673 has no application in determining the proper prorating of any tax refund and (4) the bankrupts' Application to Reclaim Property be denied.

Under the provisions of Rule 52(a), Federal Rules of Civil Procedure, the Court finds that the facts and conclusions of law set forth herein are sufficient so that separate Findings of Facts and Conclusions of Law will be unnecessary. Counsel for the Trustee will prepare and lodge an appropriate Order.

Dated: March 28, 1972.

(s) James E. Moriarty

JAMES E. MORIARTY,
Referee in Bankruptcy