In the Matter of Henry A. KOKOSZKA et al., Bankrupts, Petitioners.

No. 496, Docket 72-1972.

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1973.

Decided May 18, 1973.

---

See also 336 F.Supp. 1029.

992

Stuart Bear, New Haven, Conn. (William H. Clendenen, Jr., David M. Lesser, Joanne Faulkner, and Frank Dineen, New Haven, Conn., on the brief), for appellants.

Richard Belford, New Haven, Conn., on the brief, for appellee Trustee in Bankruptcy.

Before KAUFMAN, ANDERSON and MANSFIELD, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

The three appellants herein each filed separate individual voluntary petitions

in bankruptcy, all of which raise the issue of whether or not, and to what extent, an income tax refund passes to the trustee in bankruptcy as property of the estate. In each case the petitioner had claimed the maximum number of deductions to which he was entitled on his tax withholding statement and in each case the refund was the only asset of the bankrupt estate.

Henry Kokoszka filed his petition and was adjudicated a bankrupt on January 5, 1972. On February 3, the referee ordered him to turn over the proceeds of his 1971 income tax refund to the trustee. After a motion to vacate the order was denied, Kokoszka petitioned for review in the District Court. In the meantime, he turned over the refund amount of $250.90 to the trustee to hold pending the determination of this matter, and he was given his discharge in bankruptcy on August 24, 1972.

Herbert Sands was adjudicated a bankrupt on February 4, 1970, and was ordered to turn over his 1969 tax refund to the trustee. Instead, Sands spent his refund of $201.97, and the trustee moved on March 12, 1971, to deny the discharge for this reason. Subsequent to that, the petitioner moved to vacate the turn-over order, but the referee denied the motion and denied the discharge. Sands then petitioned the District Court for review.

Frank O'Brien was adjudicated a bankrupt on April 30, 1970, and was ordered to turn over his 1969 refund of $136.00 to the trustee. He, too, failed to obey the order and the trustee moved to deny the discharge on March 18, 1971. The referee has not yet ruled on the trustee's motion, but he did deny O'Brien's motion to vacate the original turn-over order, and the petitioner sought review of that denial.

After consolidating the three cases, the District Court held that the tax refunds were property that passed to the trustee under § 70(a)(5) of the Act, 11 U.S.C. § 110(a)(5), and that the Consumer Credit Protection Act, 15 U.S.C. § 1671 et seq., did not require that the trustee return 75% of the refund to the petitioners. On these issues we affirm; however, we do remand Sands' case in order that the referee may exercise his discretion on whether or not to grant him a discharge in bankruptcy.

The primary point raised by this appeal is whether or not a tax refund is "property" which passes to the bankruptcy trustee under § 70(a)(5) of the Act.[1] The Ninth Circuit recently held that such a tax refund is not § 70(a)(5) property, In Re Cedor, 470 .F.2d 996 (9 Cir. 1972); aff'g on the opinion below, 337 F.Supp. 1103 (N.D.Cal.1972). In Re Jones, 337 F.Supp. 620 (D.Minn.) leave to appeal denied (8 Cir., May 14, 1971), cert. denied, 404 U.S. 1040, 92 S. Ct. 719, 30 L.Ed.2d 732 (1972), however, held that a refund does pass to the trustee and the same holding was implicit in In Re Wetterhoff, 453 F.2d 544 (8 Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 242, 34 L.Ed. 188 (1972), holding that, at the time of filing, the excess of accrued but unpaid wages over and above the portion exempt from attachment under state law, passed to the trustee.

The decision in the present case is governed in large part by two Supreme Court cases, Segal v. Rochelle, 382 U.S.

---

1. The pertinent parts of § 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a) (5), read as follows:

 "(a) The trustee of the estate of a bankrupt . . . [shall] be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title . . . to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the

 petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ."

 It is undisputed that the refunds could have been transferred under Connecticut law at the time of the filing of the petition, cf., Segal v. Rochelle, 382 U.S. 375, 381–385, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), which held that a business generated loss-carryback tax refund, which did not accrue until after the filing of the bankruptcy petition, was § 70(a)(5) property, and Lines v. Frederick, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), which held that vacation pay, accrued but unpayable at the time of filing, did not pass to the trustee.

■ For the purpose of considering what treatment should be given to the tax refunds in question here, the term "property" in § 70(a)(5) must be defined in terms of the purposes of the Bankruptcy Act, rather than by more traditional concepts, Segal, supra, 382 U.S. at 379, 86 S.Ct. 511; In Re Spanish Language Television, 456 F.2d 159, 162 (9 Cir. 1972). Basically, the term "property" is given a generous construction in order to give creditors everything of value, including items where the enjoyment of value is postponed, Segal, supra, 382 U.S. at 379, 86 S.Ct. 511; In Re Robbins Converting Corp., 441 F.2d 1096, 1098 (2 Cir. 1971). The definition of property is limited, however, where the debtors are wage earners "whose sole source of income, before and after bankruptcy, is their weekly earnings," Lines, supra, 400 U.S. at p. 20, 91 S.Ct. at p. 114 and who, at the filing of their petitions in bankruptcy have wages, as such, or as vacation pay, accrued but not yet paid, and where "the minimal requirements for the economic survival of the debtor are at stake," id., such wage payments are not "property" to be turned over to the trustee under § 70(a)(5). The purpose of this exception is to give the debtor a "new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt," Lines, supra, at 1–20, 91 S.Ct. at 114; Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

■ The test as to whether or not such items as accrued but unpaid wages are or are not "property" to be turned over to the trustee is whether the item is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70(a)(5)," Segal, supra, 382 U.S. at 380, 86 S.Ct. at 515.

There were two petitioners in Lines both of whom had accrued vacation pay at the time of the filing of the petition, but neither could receive it until he either went on vacation or his employment was terminated. The one petitioner, Frederick, worked for a manufacturing company which shut down for a week twice a year thereby forcing their employees to take a vacation. The other, Harris, could choose his vacation period, if he desired to take one.

If the vacation pay was held to be property of the estate, it would appear at first glance that Harris was in a somewhat better position that Frederick, because Harris was not forced to take a vacation and go without basic support. Nevertheless, he also was in a difficult position. If he took a vacation, he would have no income for that period; yet, if he did not, and he was laid off, he would not have the use of the pay upon termination for basic support while seeking new work.

Realizing that "[t]he function of their accrued vacation pay is to support the basic requirements of life for them and their families during brief vacation periods or in the event of a layoff," the Supreme Court held that this vacation pay was a specialized type of property that did not pass to the trustee because to hold otherwise would deny the debtor the new opportunity in life which the Bankruptcy Act intended to provide, Lines, supra, 400 U.S. at 20, 91 S.Ct. at 114.

■ What we have then in Lines is a very narrow exception to the general proposition that everything of value passes to the trustee, i. e., vacation pay which will become essential for basic week to week support in the future does

not pass. Because a tax refund is not the weekly or other periodic income required by a wage earner for his basic support, to deprive him of it will not hinder his ability to make a *fresh* start unhampered by the pressure of preexisting debt. Therefore, the tax refund is § 70(a)(5) property which passes to the trustee.

■■ The petitioners have advanced several arguments, however, that bear some comment. First, they maintain that wages, as such, are a specialized type of property which does not pass to the trustee and that a tax refund is nothing more than a refund of over withheld wages. The problem with this argument is that when the Court in *Lines, supra,* at 20, 91 S.Ct. 113, or in other cases such as Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), speaks of wages as a special type of property, it is referring to the periodic payments required to meet basic needs.[2] Just because some property interest had its source in wages, however, does not give it special protection, for to do so would exempt from the bankrupt estate most of the property owned by many bankrupts, such as savings accounts and automobiles which had their origin in wages.

■ The petitioners also argue that as wage earners they have come to rely upon the tax refund as an expected annual event and that to take it from them would deny them a fresh start in life. It was this reasoning that convinced the court in In Re Cedor, *supra,* 470 F.2d at 1105, that tax refunds should not be § 70(a)(5) property, but we find it unpersuasive. Many people may come to rely upon such things as a Christmas Club account or year end dividends from stock ownership to give them a special source of income at certain times of the

year, but this does not make such items immune from a turn-over order in bankruptcy. Permitting a bankrupt to retain his tax refund would not be giving him a "fresh start" to accumulate new wealth but a "head start" over others who had no such refund.

Finally, the petitioners argue that a tax refund should not be § 70(a)(5) property because such refunds will often be of no benefit to the creditors but will be used up in administration expenses.

We are concerned with the fact that, on the average, in all personal bankrupcy cases 41% of the assets of the estates are paid out for trustees' fees and other administration expenses, D. Stanley & M. Girth, Bankruptcy: Problem, Process, Reform 91 (Brookings Institution 1971). Furthermore, nearly one case in five is one of only nominal assets, that is, a case where all of the assets in the estate are consumed in administration expenses, leaving nothing for creditors, Stanley & Girth, *supra,* at 87–88, 175.

It is apparent why this happens in the small asset estates. Section 48(c)(1) of the Act, 11 U.S.C. § 76(c)(1), provides that a trustee can be compensated up to $150.00 plus expenses no matter how small the estate, and we have recently noted that in practice trustees are generally awarded the maximum fee, In Re Schautz, 390 F.2d 797, 800 (2 Cir. 1968); *see also,* Snedecor, Fees and Allowances in Straight Bankruptcy, 40 Ref.J. 26, 27 (1966). If that standard is applied to the cases currently before us, it can be seen that there will be nothing for creditors in the O'Brien estate and, at best, only a very small balance in the Kokoszka and Sands estates which might well be used up for other administration expenses, *cf.,* Stanley & Girth, *supra,* at 92, 173–195.

■ Clearly the purpose of the Bankruptcy Act was to benefit creditors and

---

2. We are fully aware that the petitioners in this case either spent or would spend their refunds for such needed items as health care, furniture and rent, but we do not see how the use of the money for what is characterized as "necessities" makes it any less § 70(a)(5) property, *cf.,* Fuentes v. Shevin, 407 U.S. 67, 90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

debtors, not trustees, *see,* In Re Kingswood, 343 F.Supp. 498, 504–505 (C.D.Cal. 1972), rev'd on other grounds, 470 F.2d 996 (9 Cir. 1972); In Re McGrath Mfg. Co., 95 F.Supp. 825, 829 (D.Neb.1951). Therefore, there is no sense in taking a small sum from the bankrupt debtor, which he could well use to get started again, if there is to be no value to the creditors.

■■■■■ This does not mean, however, that all tax refunds should be held not to be § 70(a)(5) property, because a refund may be fairly large or only one asset among others. If a debtor is in a position where his non-exempt assets will be entirely eaten up by administration costs, leaving nothing for creditors, he can move the bankruptcy court for an order of abandonment,[3] *see* In Re Mirsky, 124 F.2d 1017 (2 Cir. 1942), cert. denied, 317 U.S. 638, 63 S.Ct. 29, 87 L.Ed. 514 (1942); *cf.,* In re Ira Haupt & Co., 398 F.2d 607, 612–613 (2 Cir. 1968). See Calverley, Income Tax Refunds Due Wage Earners, 39 Ref.J. 8, 10–11 (1965), for a general discussion of the various abandonment practices of California referees for tax refunds. In moving for an abandonment, the debtor can present what evidence and arguments he may have to support his contention that it would not work an injustice to creditors to abandon the assets and not appoint a trustee. Whether or not to grant such a motion rests in the sound discretion of the referee. He should grant the motion if it is reasonably clear that the assets, otherwise available for creditors, will be entirely consumed by trustee's fees and other administration expenses, that no creditor has shown that there was a likely opportunity for a trustee to recover additional assets, and that the absence of a trustee will not, under the circumstances, cast a substantial additional burden on the Bankruptcy Court.

The petitioners further argue, however, that even if a tax refund is § 70(a)(5) property, the trustee can take only 25% of it because of the Consumer Credit Protection Act's limitation on garnishment, 15 U.S.C. § 1671 et seq. That Act provides that no more than 25% of a person's aggregate disposable earnings for any workweek or other pay period may be subject to garnishment, 15 U.S.C. § 1673(a). The definitions of the key terms "earnings", "disposable earnings," and "garnishment" are set forth in the margin.[4]

The petitioners argue that a tax refund is "earnings" because it had its source in wages and that when it is returned to the taxpayer it is all "disposable earnings" because nothing is required by law to be withheld from the refund. Furthermore, they claim that the taking by the trustee is a "garnishment" because a bankruptcy proceeding is a legal or equitable procedure through which the earnings of an individual are withheld for payment of a debt.

■■■■■ Although this reasoning was adopted by the Ninth Circuit in In Re Cedor, *supra,* we do not follow it, but hold that a tax refund is not "earnings" for the purpose of § 1672 and, therefore, it is not protected by § 1673.

■■■■■ The intent of the Consumer Act was to make sure that wage earners

---

3. A further benefit to a bankrupt debtor, if all assets are abandoned, is that a trustee need not be appointed which saves the petitioner $10 of the filing fee, United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).

4. 15 U.S.C. § 1672 reads as follows:
"For the purposes of this subchapter:
(a) The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.
(b) The term 'disposable earnings' means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

(c) The term 'garnishment' means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt."

were able to receive at least 75% of their take home pay in any one pay period so that they would have enough cash to meet basic needs. As a side effect, it was hoped that honest debtors, with this protection on their wages, would not be forced into bankruptcy, H.Rep. No. 1040, 90th Cong., 2d Sess., U.S.Code Cong. & Ad.News, 1962, pp. 1977–79 (1968). It is clear, then, both from the language of the statute, §§ 1672, 1673 and the legislative intent, that "earnings" means periodic payments of compensation and does not pertain to every asset that is traceable in some way to such compensation. *See also*, 29 C.F.R. § 870.10(b); In Re Kingswood, *supra*; *cf. Lines, supra*, 400 U.S. at 20, 91 S.Ct. 113.

Petitioner Sands also appeals from the failure of the referee to exercise his discretion on whether or not to grant him a discharge in bankruptcy, even though he failed to obey the order to turn over his tax refund. The referee refused to consider a discharge, holding that § 14(c)(6) of the Bankruptcy Act, 11 U. S.C. § 32(c)(6),[5] mandated that he deny the discharge, if the bankrupt disobeyed a lawful order. The district court did not rule on the issue in this case, but in a similar case it remanded to the referee for him to exercise his discretion, In Re Boudreau, 350 F.Supp. 644 (D.Conn. 1972).

 Section 14(c) of the Act requires that a discharge be granted unless a bankrupt has done one of eight things among which is failure "to obey any lawful order of . . . the court," § 14(c)(6). The statute, however, does not state that a discharge *must* be denied for failing to obey an order, as the referee appears to have assumed.

 As stated above, one of the primary purposes of the Bankruptcy Act is to give debtors a new chance in life and the various provisions of the Act must be read with this intent in mind, Local Loan Co., *supra*, 292 U.S. at 244–245, 54 S.Ct. 695; therefore Bankruptcy Courts must exercise their powers so that "substance will not give way to form" and "technical considerations will not prevent substantial justice from being done," Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). To this end, we have long held that the Act must be liberally applied toward the bankrupt applying for his discharge, In Re Reisler, 278 F. 618 (2 Cir. 1922); *see also*, In Re Tabibian, 289 F. 2d 793, 795 (2 Cir. 1961).

 Therefore the referee must exercise his discretion whether or not to grant a discharge, even when an order has not been followed. This position has strong support in the case law, *see, e.g.* In Re Barbato, 421 F.2d 1324, 1327 (3 Cir. 1970); Jayne Meadows Travel Agency v. Dashiell, 416 F.2d 1253, 1254 (9 Cir. 1969); In Re Boudreau, *supra*; In Re Van Meter, 208 F.Supp. 835 (S. D.Cal.1962). The denial of a discharge can work a serious deprivation upon a debtor, and there are many circumstances where a bankrupt's disobedience may have been inadvertent or otherwise excusable. Moreover the denial of a discharge is not the only weapon available to the referee in order to enforce his orders as a recalcitrant petitioner can also be held in contempt, 11 U.S.C. § 69; *cf.*, In Re U. S. Hoffman Can Corp., 373 F. 2d 622, 626 (3 Cir. 1967). This is not to be read, however, as minimizing the seriousness of the debtor's offense in disobeying a lawful order, nor do we suggest that a blatant violation should be condoned.

 Therefore, before denying a discharge, the referee should weigh the detriment to the proceedings and the dignity of the court against the poten-

5. Section 14(c)(6) of the Bankruptcy Act, 11 U.S.C. § 32(c)(6) reads as follows: "(c) The court shall grant the discharge unless satisfied that the bankrupt has . . . (6) in the course of a proceed- ing under this title refused to obey any lawful order of, or to answer any material question approved by, the court; . . . ."

tial harm to the debtor if the discharge is denied. He should consider such factors as the intent behind the bankrupt's acts—were they wilful or was there a justifiable excuse; was there injury to the creditors; and is there some way that the bankrupt could make amends for his conduct. For example, in the present case, the referee might consider granting a discharge if the petitioner turns over to the trustee the amount of his refund check.

The decision of the District Court holding that the entire amount of the tax refunds is property belonging to the trustee in bankruptcy is affirmed; the case of petitioner Sands is remanded to the District Court for further proceedings consistent with this opinion.