**In the Matter of Charles Armand JONES, Bankrupt.**

**FRIENDLY FINANCE DISCOUNT CORPORATION, Appellant,**

v.

**Charles Armand JONES, Appellee.**

**No. 73-2496**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Feb. 25, 1974.

---

* Rule 18, 5 Cir., see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

John G. Loftin, Monroe, La., for appellant.

Sam O. Henry, III, West Monroe, La., for appellee.

Appeal from the United States District Court for the Western District of Louisiana.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

In this bankruptcy case appellant Friendly Finance Discount Corporation asks us to approve its none too amicable attempts to ensnare Charles Armand Jones in the statutory intricacies of the Bankruptcy Act. Believing that appellant's objections were properly discounted below, we affirm the district court's order upholding the decision of the bankruptcy judge to grant an unrestricted discharge.

Jones filed a voluntary petition in bankruptcy in the United States District Court for the Western District of Louisiana on March 31, 1971, and was adjudicated a bankrupt. On April 27, 1971, appellant filed a motion for completion of schedules, based on Jones' failure to include on the Schedule A-3 Statement of debts owed to unsecured creditors the dates on which certain debts were contracted.[1] The same day the bankruptcy judge ordered Jones to complete the Schedule A-3 within ten days of service of the order.

On June 21, 1971, appellant filed a Specification of Objections to Discharge and an application to have the debt owed to it declared nondischargeable.[2] Appellant charged that Jones knowingly and fraudulently made various oaths; that in an effort to defraud his creditors, he knowingly concealed or transferred various assets, including an automobile, an insurance policy, a savings account, and a rifle; that he fraudulently disposed of mortgaged assets by pawning and not redeeming a rifle and by destroying a citizens band radio in order to hinder or defraud his creditors; that he had received credit based on a financial statement that did not list all of his debts; and that he had disobeyed a lawful order of the court by failing to file a timely amendment to his Schedule A-3.

On August 27, 1971, a hearing was held before the bankruptcy judge on the objections to discharge, and on March 2, 1972, the judge rendered his decision that bankrupt was entitled to discharge.[3] Friendly Finance petitioned for review of the order, repeating its list of objections to discharge and urging the district court to reverse the bankruptcy judge's decision. Instead the court affirmed the bankruptcy judge's findings and rulings in all respects. On this appeal Friendly Finance has dropped all but one of its objections to discharge— that bankrupt never complied with a lawful order of the court.

Section 14(c)(6) of the Bankruptcy Act, 11 U.S.C. § 32(c)(6) (1970), pro-

---

1. *See* 2 Collier on Bankruptcy ¶ 18.08 (14th ed. 1971) ; 5 *id.* at 2635.

2. Appellant claimed the amount of $968.44, plus interest at 8% per annum and attorneys' fees and costs.

3. The bankruptcy judge concluded that no fraudulent concealment of assets had occurred because (a) Jones did not own the car; (b) the savings account contained only $1.00, which Jones might reasonably consider no asset; (c) the life insurance was a group policy owned by Jones' employer; and (d) the rifle was clearly exempt. He also held that though the so-called mortgage was invalid, in any event no fraudulent disposition had occurred because (a) the pawning of the rifle was only a second mortgage with no intended final disposition; (b) Jones still owned the radio and other listed assets; and (c) a listed black and white television set did not work. In addition, the judge found that there was a total lack of evidence that Jones had knowingly made false financial statements with an intent to defraud creditors.

vides that discharge shall be granted unless the court is satisfied that the bankrupt "in the course of a proceeding under this title refused to obey any lawful order of . . . the court. . . ." *See* 1A Collier, *supra* note 1, at ¶ 14.57. In this case the order of the court was that Jones "complete Schedule A–3 stating the dates the debts were contracted within ten days of the date this order is served." It is undisputed that the order was lawful, *see* 11 U.S.C. § 67(a)(3); 1A Collier, *supra* note 1, at ¶ 7.12; 2 *id.* at ¶ 39.05. It is also undisputed that Jones did not comply with the literal terms of the order. At the August 27, 1971, hearing on objections to discharge, the bankruptcy judge sought the reasons for the failure to comply. The attorney for the bankrupt explained that although he was unable to get any more specific information about the dates of the debts, he had prepared a timely amendment that essentially restated the information in the original petition. Unfortunately, through mistake or inadvertence the amendment was left in the attorney's files instead of being filed with the court. Over objection by Friendly Finance, the bankruptcy judge accepted the tendered amendment, then completed the schedule in open court in colloquy with Jones' attorney.

Citing various provisions of the Bankruptcy Act, General Orders, and Official Forms, appellant argues that Jones should not have been allowed to amend his schedule at the time of the hearing, nearly four months after the deadline imposed in the initial order. To allow him to do so would be to hold creditors to the letter of the law while permitting bankrupts' "sloppy and illegal compliance." Furthermore, even if the late date of the amendment was not objectionable, the oral method of the amendment rendered it nugatory, because amendments to petitions and schedules must be printed or written, signed, verified, and filed in triplicate. Since the attempted amendment was legally insufficient, the bankrupt never did comply

with the lawful order, and discharge should not have been granted.

Reliance on the Bankruptcy Act, chapter and verse, is to be applauded, but statutory detail should never obscure the relatively simple standards by which a Court of Appeals must evaluate this type of bankruptcy case. The right to a discharge in bankruptcy is addressed to the sound discretion of the bankruptcy court, and appellate courts should interfere only for the most cogent, compelling reasons in situations of gross abuse. In the Matter of Moran, 3 Cir. 1972, 456 F.2d 1030, cert. denied, 409 U.S. 872, 93 S.Ct. 201, 34 L.Ed.2d 123; In the Matter of Barbato, 3 Cir. 1970, 421 F.2d 1324, 1327; Jayne Meadows Travel Agency v. Dashiell, 9 Cir. 1969, 416 F.2d 1253; Spach v. Strauss, 5 Cir. 1967, 373 F.2d 641, citing, Minella v. Phillips, 5 Cir. 1957, 245 F.2d 687, 690; Kansas Federal Credit Union v. Niemeir, 10 Cir. 1955, 227 F.2d 287, 291. Thus, as we said in Spach v. Strauss, *supra,* 373 F.2d at 644, and repeated in Martin v. Mercantile Financial Corporation, 5 Cir. 1968, 404 F.2d 886, "The sole inquiry here . . . is whether the factual issues were resolved erroneously, and clearly so, and whether the discharge in this case amounted to an abuse of discretion." *Accord,* Morehead v. Greenville Supply Co., 6 Cir. 1971, 439 F.2d 962, 963, 964.

Friendly Finance apparently believes that under the Act, the failure of a bankrupt to obey a lawful order of the court is an "automatic bar that obviates the need to exercise any discretion," *see* In re Boudreau, D.Conn.1972, 350 F. Supp. 644, 646. Since the order to complete the schedules was concededly lawful and the bankrupt could point to no impossibility of performance, the failure to comply required the bankruptcy court to deny discharge. To answer this argument we need go no further than the Act itself, which does not say that a discharge *must* be denied for failure to obey an order. Our conclusion is reinforced by the case law, especially a re-

cent decision by the Second Circuit, based on similar reasoning, holding that "the referee must exercise his discretion whether or not to grant a discharge, even when an order has not been followed." In re Kokoszka, 2 Cir. 1973, 479 F.2d 990, 997. *Accord,* Jayne Meadows Travel Agency v. Dashiell, 9 Cir. 1969, 416 F.2d 1253, 1254; In re Boudreau, D.Conn.1972, 350 F.Supp. 644; In re Van Meter, S.D.Cal.1962, 208 F. Supp. 835; In re Edwards, S.D.Cal.1947, 73 F.Supp. 312; In re Setzler, S.D.Cal. 1947, 73 F.Supp. 314. As the *Kokoszka* court noted,

> The denial of a discharge can work a serious deprivation upon a debtor, and there are many circumstances where a bankrupt's disobedience may have been inadvertent or otherwise excusable. Moreover the denial of a discharge is not the only weapon available to the referee in order to enforce his order as a recalcitrant petitioner can also be held in contempt . . . .

479 F.2d at 997.

■■ Appellant makes no challenge in this appeal to the resolution of factual issues below, and our own examination of the record has revealed no plain error. We are thus now limited to a search for abuse of discretion, mindful of two important principles. First, the right to discharge is statutory, and the provisions of section 14 of the Act relating to discharge should be construed liberally in favor of the bankrupt and strictly against the objecting creditor. Spach v. Strauss, *supra,* 373 F.2d at 642–643; In re Pioch, 3 Cir. 1956, 235 F.2d 903, 905. Secondly, the reasons for denying discharge to a bankrupt must be real and substantial, not merely technical or conjectural. In re Pioch, *supra;* Dilworth v. Bootle, 5 Cir. 1934, 69 F.2d 621, 624.

■ We do not, of course, mean to denigrate the importance of complying with the lawful orders of the court throughout the course of a bankruptcy proceeding. Certainly there are situations in which failure to obey such orders can have seriously deleterious consequences for creditors or on the authority of the court. The bankruptcy judge, however, is in the best position to make this evaluation, and we should be reluctant to challenge his conclusions. In *Kokoszka, supra,* 479 F.2d at 997–998, the Second Circuit outlined some of the factors to be considered by the bankruptcy judge in deciding whether failure to obey an order justifies denying discharge:

> [He] should weigh the detriment to the proceedings and the dignity of the court against the potential harm to the debtor if the discharge is denied. He should consider such factors as the intent behind the bankrupt's acts— were they wilful or was there a justifiable excuse; was there injury to the creditors; and is there some way the bankrupt could make amends for his conduct.

In the case at bar the bankruptcy judge found that the failure to comply with the order to supply the dates was not due to wilful, intentional disobedience or dereliction, but rather to inadvertence and mistake. There was no evidence of any intent to harm creditors or insult the authority of the court. More important, the court obviously could perceive no real injury to the creditors, and in fact remedied the omission in a short oral exchange at the hearing.

■■ Appellant argues that a bankrupt cannot be allowed to hide behind his attorney's carelessness, that advice of counsel is no excuse for intentional disobedience of a lawful order. Of course, we have already noted that the courts below found there to have been no intentional disobedience. Moreover, we agree with both the bankruptcy judge and the district court that appellant's reliance on the hoary principle that a client is bound by his attorney's mistakes is inappropriate in the context of this case. Bankruptcy schedules are prepared by counsel, and a bankrupt will understandably rely on his attorney to

guide him safely through the proceedings. *Cf.* In re Topper, 3 Cir. 1956, 229 F.2d 691. To deny discharge to one seeking shelter in the safe harbor of the Bankruptcy Act merely because of this type of mistake of counsel, especially where no prejudice or harm results to the creditors, would impose a kind of strict liability Congress could never have intended. It is one thing to run aground on hazardous but legitimate reefs; it is quite another to be lost in pettifoggery. The orders of a bankruptcy court must be given full respect and obedience, and we certainly do not condone carelessness. We do not believe, however, that the bankruptcy court in any way abused its discretion by refusing to penalize the bankrupt for this inadvertence.

▬ Nor do we agree with appellant that allowing the oral amendment was illegal or improper. Amendments to bankruptcy petitions and schedules are specifically authorized by General Order 11. It is well settled that amendments must be liberally granted and will be reviewed only for an abuse of discretion. Blankenship v. Citizens National Bank, 5 Cir. 1970, 431 F.2d 569; 2 Collier, *supra* note 1, at ¶¶ 18.19, 18.21. It is also settled that the bankruptcy judge has a duty to cause defective schedules to be amended. 11 U.S.C. § 67(a)(3); 2 Collier, *supra* note 1, at ¶ 39.05. We recognize that amendments must normally meet certain requirements of formality, such as being signed and verified, and we affirm that compliance with these requirements is of great importance. *See* General Order in Bankruptcy 11, set out in 28 U.S.C.A. (1970); 2 Collier, *supra* note 1, at ¶ 18.20. Nevertheless, the oral, informal amendment procedure employed by the bankruptcy court was, in the context of his case, well within the sound exercise of the court's discretion.

Very similar to the instant case was In re Seely Tube and Box Company, 3 Cir., 219 F.2d 389, cert. denied, 1955, 350 U.S. 821, 76 S.Ct. 46, 100 L.Ed. 734. There the Third Circuit expressly approved the action of a referee in bankruptcy in accepting an oral, in-court statement of the existence and amount of a government claim as an informal amendment of the debtor's schedule of creditors. The court's reasoning is simple and instructive: "Certainly the informal scheduling of the claim disclosed by the record served all the purposes in this case which a more formal procedure would have accomplished." *Id.* at 391.[4]

The Bankruptcy Act was intended to be a sturdy bridge over financially troubled waters by means of which "the honest but unfortunate debtor" may reach "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 1934, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235. We refuse to make it a treacherous tightrope on which the slightest misstep spells disaster and over which only the most accomplished acrobat can successfully pass.

Affirmed.

---

4. Ex parte Certo, W.D.N.Y.1934, 8 F.Supp. 685, cited by Friendly Finance as authority for its position that no amendment should have been allowed, is, we think, inapposite. There the court held that amendments of schedules should not be allowed where the original omission was fraudulent.