**In the Matter of Donald Howard MELVIN and Rebecca Delores Melvin, Debtors.**

**Thomas J. CARLSON, trustee in bankruptcy, Plaintiff**

v.

**SOUTHWEST MOBILE HOMES and Norman and Oleva Cochran, Defendants.**

Bankruptcy No. 85–03137–SW.
Adv. A. No. 85–0696–SW.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

June 13, 1986.

Thomas J. Carlson, Springfield, Mo., for plaintiff.

Susanna Jones, Legal Aid of Mo., Joplin, Mo., for defendants.

Charles M. Edwards, Joplin, Mo., for debtors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING COMPLAINT FOR RELIEF

DENNIS J. STEWART, Chief Judge.

The complaint which commenced the within adversary action was filed by the plaintiff trustee in bankruptcy on December 5, 1985. In that complaint, he sought a determination of the court pursuant to section 544 of the Bankruptcy Code that a 1985 Commodore Medallion Trailer was property of the estate despite a claim of the defendant Southwest Mobile Homes of a perfected security interest in the trailer and a claim of interest by the defendants Cochran based on their deed of trust on the real property on which the mobile home sits. In their answer to the complaint, the defendant Cochran contended "that they do have a perfected security interest in the Commodore Medallion Trailer by virtue of their sale of this trailer to Donald and Rebecca Melvin and by virtue of the application for title filed with the State of Missouri on April 24, 1985." In pleadings later filed with the court,[1] the defendants Cochran further stated that "(t)he title to the mobile home showing Norman and Oleva Cochran as lienholders has not yet been issued by the State of Missouri because of a dispute between Southwest Mobile

---

1. See the "motion to set aside default judgment" filed by the defendants Cochran on January 21, 1986. The default judgment has now been effectively set aside because of the interest in determining actions on the merits and because the movants have sufficiently demonstrated excusable neglect in failing initially to answer.

Homes and Debtors, Donald Melvin and Rebecca Melvin. Because of this dispute, Southwest Mobile Homes has failed and refused to provide the State of Missouri with the MSO which the State of Missouri requires before issuing title."

The merits of the action came on before the bankruptcy court for hearing on March 20, 1986,[2] in Joplin, Missouri, whereupon the plaintiff appeared by R. Deryl Edwards, Esquire, counsel; the defendants Cochran appeared by Susanna Jones, Esquire; and the debtors appeared by counsel, Charles M. Edwards, Esquire. Gary Fuller, Esquire, appeared for the Defendant Southwest Mobile Homes. According to his testimony, he is the vice president and finance officer of the defendant Southwest Mobile Homes. He states that the defendant Southwest Mobile Homes entered into a contract for purchase and sale of the subject trailer home with the debtors Donald and Rebecca Melvin; that, in return for the delivery of the mobile home, the defendant Southwest Mobile Homes received from the Melvins the sum of $6,100.00 and a 1973 Atlantic mobile home as a trade-in; that all that is owed at the present time from the debtors to the Southwest Mobile Homes in the sum of $650.00, which are the service charges from the dealer's having to run sewer lines in order to complete the installment and delivery of the trailer; that, on this basis, it is the contention of the Southwest Mobile Homes that "the sale was never completed because the debtor never paid all amounts due to dealership in accordance with the purchase agreement"; that, in accordance with the contention thus advanced by Southwest Mobile Homes, that defendant still has possession of the certificate of title; that the debtors sent an application for certificate of title to the Missouri Department of Revenue, but did not pay the fee therewith;

that title, accordingly, has remained with the defendant Southwest Mobile Homes, according to its contention, even though the debtors contend that they have paid the full purchase price; and that, therefore, when the trustee offers no evidence in any way to attack the claim of right of the Southwest Mobile Homes, their title interest should be recognized as superior to that of the debtors' successor in interest, the trustee in bankruptcy.

According to the testimony of Bill Neeley, a mobile home dealer, the mobile home in question has a current fair market value at retail of about $10,000 and, if complete with appliances, the value would be about $11,200 to $11,800. The debtors claim a homestead exemption in the mobile home under section 513.475 RSMo to the extent of $8,000 of its value. In riposte, the trustee's counsel contends that the debtors cannot claim the mobile home as a homestead when they have not complied with the provisions set out in section 700.110 RSMo necessary to treat the mobile home as real estate.[3] The debtors contend that the mobile home is a fixture on the land which they are purchasing from the defendants Cochran, who hold a deed of trust on it which is admittedly properly recorded and perfected.[4]

■ It does not appear that the courts would be so finicky in defining a homestead as automatically to rule out a mobile home which had not been a subject of conversion under state law to real property. See, e.g., *In re Turner*, 44 B.R. 118 (Bkrtcy.W.D.Mo.1984), in which it seems to have been taken for granted that a house trailer could constitute a homestead without any consideration of the provisions of section 700.110, *supra*. This is especially so when it is uniformly held that "exemption laws were manifestly enacted for the

2. And see note 1, *supra*.

3. Section 700.110 describes the steps which must be taken in order to convert a "manufactured home to real estate." The purpose appears to be to prevent a creditor from recovering the home by replevin. *Lee's Mobile Homes, Inc. v. Grogan*, 621 S.W.2d 317 (Mo.App.1981).

There is no apparent purpose to preclude a claim of homestead exemption for failure to comply with section 700.110.

4. No evidence was offered which explicitly supported an attack on the Cochran's claims to this effect.

relief of a debtor, and more particularly for his family, and should be liberally construed." *Murray v. Zuke,* 408 F.2d 483, 487 (8th Cir.1969). "Further, statutes must be interpreted so as to give effect to their fundamental purpose," *Matter of Burger,* 34 B.R. 467, 468 (Bkrtcy.W.D.Mo. 1983), which, in the instance of the homestead exemption, is to grant the debtor and the debtor's family a roof over their heads. It therefore appears that the debtors' claim of a homestead exemption in the mobile home would, if title should devolve upon them, have to be honored. And, in order for the trustee to recover the property under section 544, *supra,* or under section 541 of the Bankruptcy Code, he must claim title through the debtors. Therefore, even if the trustee should win his claim attacking the title of the defendant Southwest Mobile Homes, he is faced with the immediate claim by the debtors of the $8,000 homestead exemption. This would take up all but $2,000 or $3,000 of the value of the property, according to the evidence which the trustee has adduced.

■ Further, the trustee's attack on the title interest of the defendant Southwest Mobile Homes must necessarily be based on the fact that the debtors have paid the entirety of the purchase price of the trailer to that entity. But the evidence is uncontradicted that some $650 remains to be paid to the defendant Southwest Mobile Homes. The trustee can produce no evidence to contradict this claim and the title interest of Southwest Mobile Homes must therefore be deemed to exist at least to this extent. Interest would almost certainly be due to some extent on this amount. Therefore, the trustee, regardless of the outcome of the dispute between Southwest Mobile Homes and the debtor as to whom title should belong, could figure to recover, over and above the homestead exemption and the amounts due to Southwest Mobile Home, only an amount of $1,000 or so and, in all probability, much less.

Further, the debtors do not request that the trustee in any way recover their homestead interest over and against the claims of the Southwest Mobile Homes. In a "motion for homestead allowance" filed in this action on February 12, 1986, the debtors explicitly request that the court "order the trustee to abandon this property." The debtors then, presumably, can pay the Southwest Mobile Homes the $650 or so which they owe it and gain control of their homestead.

In the meantime, the court should decline to permit the trustee in bankruptcy to recover such a minimal amount that it could only be used to pay attorney's fees for the trustee. It is to be remembered that "the purpose of the Bankruptcy Act was to benefit creditors and debtors, not trustees." *In re Kokoszka,* 479 F.2d 990, 996 (2d Cir.1973). Accordingly, if the estate is in a position whereby "non-exempt assets will be entirely eaten up by administration costs, leaving nothing for creditors, (a debtor) can move the bankruptcy court for an order of abandonment." *Id.,* "There is no sense in taking a small sum from the bankrupt debtor ... if there is to be no value to the creditors." That is the case at bar, in which any recovery would be small and would be consumed by the costs of administration. The *de minimis* effect on the bankruptcy estate leads the court to conclude that the complaint of the plaintiff should be denied.

Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED that the plaintiff's within complaint for relief be, and it is hereby, denied.