**In the Matter of Millard Delloyd MONSON and Leona Maxine Monson, Debtors.**

**FARMERS STATE BANK, Plaintiff,**

v.

**Hugh A. MINER, Defendant.**

**Bankruptcy No. 80–04205–SJ. Adv. No. 82–0741–SJ.**

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

April 20, 1988.

Order May 16, 1988.

Ronald S. Weiss, Berman, DeLeve, Kuchan & Chapman, James C. Jarrett, Heavner, Jarret & Kimball, Kansas City, Mo., for plaintiff.

R. Edward Murphy, Mark R. Woodbury, Watkins, Boulware, Lucas & Miner, St. Joseph, Mo., for defendant.

Hugh Miner, St. Joseph, Mo., Trustee.

ORDER ENFORCING ORDER OF JULY 5, 1985, AND ACCORDINGLY DIRECTING THE DEFENDANT TO TURN OVER TO PLAINTIFF THE SUM OF $60,157.66 PLUS INTEREST AT 9% PER ANNUM FROM MAY 3, 1984, TO DATE OF PAYMENT

DENNIS J. STEWART, Chief Judge.

The trustee in bankruptcy in this case has for some years resisted payment to the Farmers State Bank of some of the proceeds of sale of a certain tract of real property, which has heretofore been referred to as lot 38. This resistance has continued despite the fact that, in successive hearings held in this court and in a prior action in a state court of competent jurisdiction, the Farmers State Bank has

demonstrated beyond question that it has a valid and perfected security interest in these proceeds and that the balance due them on the obligation related to the above-mentioned lot 38 was such that it required payment of some of these proceeds to the bank. Accordingly, many years ago, on November 18, 1982, this court issued its judgment on the basis of a state court judgment directing the trustee to turn over the proceeds to the Farmers State Bank. 26 B.R. 11.

After this court rendered its decision following the decision of the state court—which the trustee had continually insisted that this court stand by and await, even as this court granted him repeated evidentiary opportunities [1]—the trustee, for the first time, raised the issue (which he had had the opportunity to raise countless times previously, both in the state court and in this court [2]) that the Farmers State Bank, if it should receive the proceeds of sale of lot 38, would receive more than the balance due it.[3]

■ It was improper for the trustee to raise such an issue on appeal, without filing, either as a counterclaim or as an action commenced by him, a claim which would enable the bankruptcy court to determine the values of the properties other than lot 38. Virtually no principle of bankruptcy law is more well-established than that which holds that a secured creditor may do as he pleases with his collateral so long as it remains outside a bankruptcy estate. A secured creditor may elect "not to prove (his claim) at all and rely solely on his security." 3 Collier on Bankruptcy para. 57.07(3), p. 169 (14th ed. 1977). Further, if the secured creditor forecloses before the date of bankruptcy, the bankruptcy trustee may not, in the absence of proven fraud or other exceptional circumstances, quibble with the price which the property has brought on the foreclosure sale. In such an instance the secured creditor, at the time of bankruptcy, with respect to the property, "is only an unsecured creditor at the time of bankruptcy; (the statute empowering the bankruptcy court to value his security) does not, therefore, come into play; and, subject to the inherent equitable powers of the bankruptcy court to prevent or redress fraud, the bankruptcy court has no power to review the liquidation where the pledgee has proceeded in accordance with the valid contractual provisions." Id.,

---

1. As this court stated in its initial judgment entered in this action on October 18, 1982: "When the matter first came before the bankruptcy court for hearing, counsel for the plaintiff and the trustee in bankruptcy appeared before this court to announce that they had elected to try the case in the Circuit Court of Buchanan County. This election was made by counsel for the plaintiff, *and by the trustee,* even though they were then reminded by the court that, under the jurisdictional statute then in effect, Sections 1471(b), (c), Title 28, United States Code, the bankruptcy court had jurisdiction concurrent with that of the state court to try the issues joined. Further, this court, by setting successive hearings to try and determine those issues in the event that a trial setting had not yet been secured in the state court, repeatedly reminded the parties, *including the trustee,* of their right and opportunity to have this matter resolved in this court. The parties, nevertheless, continued to elect to have the matter determined in the state court."

2. See note 1, *supra.*

3. Previously, in this court, in his "trial brief" filed September 1, 1982, the trustee only adverted to his having objected to the claim of the Farmers State Bank in this court and that the

"Farmers State Bank made no response to the objection." As is observed in the further text of this memorandum, an objection to the claim could not suffice as a method of bringing property into the estate. And this court attempted to hold hearings on the objection on August 20, 1981, only to be told by the trustee that he preferred to have the matter determined in a state court. The trustee attempted to elicit evidence of an excess in the trial held in this adversary action on September 24, 1982, but failed to do so. Because it appeared to this court, from the evidence which was adduced by the trustee, that he was complaining of the bank's diversion of assets which, by operation of law or otherwise, were part of the bankruptcy estate, this court, in its final judgment of October 18, 1982, mentioned that, if plaintiff "realizes an excess, it is duty bound, under pain of contempt citations for violation of section 362 and 524 of the Bankruptcy Code, to turn that excess over to the bankruptcy estate." But it has now developed that the excess would have been realized, if any, with respect to non-estate property which the trustee failed to file timely actions to bring into the estate. And, to date, no cognizable proof of an excess has been offered.

para. 57.20(5.2), p. 341. The Bankruptcy Code "recognizes the right of a secured creditor to prove a general unsecured claim for any excess of the debt over the value of the property. It does not require that a mortgagee must establish the value of mortgaged property before he may foreclose such mortgage." *In the Matter of Hayes*, 140 F.Supp. 444, 448 (D.Alaska 1956). See also *In re Shaw*, 16 B.R. 875, 876 (Bkrtcy.B.A.P.9th Cir.1982), to the effect that a bankruptcy court's equitable powers may not be used to set aside a foreclosure sale which did not violate the automatic stay. And the more recent decisions of our district court are emphatic and wholly in accordance with this principle. See *In re Taylor*, Civil Action No. 82–00559–CV–W–5 (W.D.Mo. Oct. 18, 1982), holding that the bankruptcy court in this district has no right to render orders or judgments with respect to property which has been effectively foreclosed before the date of bankruptcy. In this case, certain property which the trustee contended was worth more than the $150,000 bid at the foreclosure sale was the subject of a foreclosure on October 17, 1980, more than two months prior to the date of bankruptcy, December 29, 1980.[4]

And the trustee made no timely effort, as he might well have done, to bring the allegedly excess value into the estate. He might have utilized the appropriate adversary procedures to contend that the transfer should be avoided as a fraudulent transfer under the then-existing doctrine of *Durrett v. Washington National Insurance Company*, 621 F.2d 201 (5th Cir. 1980); or as a preferential transfer under the doctrine then set out in 4 Collier on Bankruptcy para. 547.14, p. 547–49, n. 7 (1983), to the effect that "under the Code ... the enforcement of a lien by sale prior to the petition does not prevent the trustee from avoiding the transfer of the lien as preferential." If he had done so, he might himself have supervised a reselling of the property, or otherwise have gained any excess, so that he fulfilled his duty in seeing that the bankruptcy estate received its fair share of it. When this court has previously adverted to the trustee's failure in this regard, he has stated that he timely objected to the allowance of the claim of the Farmers State Bank. But it is only rudimentary that the trustee cannot bring property into the estate by simply objecting to a claim. The claim itself is made with respect only to the general, unencumbered assets of the estate, and is not sufficient to reclaim specific property or its proceeds from the estate.[5] In order to accomplish that purpose, the secured creditor must file a complaint for reclamation,[6] which the Farmers State Bank did in the case at bar, only to find the trustee willing to permit the case to be tried and determined in a state court while he insisted that this court in the meantime take no action. Under such circumstances, when the trustee has stood mute while the secured creditor foreclosed the property outside the estate and otherwise established its right to the proceeds of its other collateral in the estate, his failing timely to file complaints leaves him with no legitimate means of even insisting that the secured creditor's interest

---

**4.** As this court stated in its order of July 5, 1985: "It seems to be the position of the trustee that more than $150,000 must be credited against the $219,607.66; that, in fact, a sum of $240,000 or $250,000 must be credited against that balance, wiping it out entirely."

**5.** "The proof of a claim asserts a right to share in the general assets. It refers to the unsecured balance over and above the value of the security. Though it must mention and specify the security claimed by the creditor, and may, therefore, be considered to incorporate an informal claim to the security itself, yet if the right to the latter must be asserted against the estate ... the proper practice is to file.... an intervening petition ... contain(ing) all the proof support-

ing the allegation that petitioner is entitled to the lien or other form of security. The mere proof of claim is no substitute for these allegations ... Neither does such proof of claim affect the creditor's right to retain the security if he holds it; nor does it, on the other hand, establish a prima facie case that he has a lien if the property is in possession of the trustee. This distinction in the functions of a proof of claim as against intervening or reclamation petitions (complaints) should therefore be taken into consideration by creditors who claim security." 3 Collier on Bankruptcy para. 57.07(3.2), p. 179 (14th ed. 1977).

**6.** See note 5, *supra.*

in those proceeds be restricted to its deficiency.[7]

On appeal, initially, the district court so held, affirming this court's decision that the trustee had not timely exerted the rights of the estate, albeit on slightly different grounds than those upon which this court had held against the trustee.[8] On the trustee's motion for reconsideration, however, the district court, seemingly as a matter of grace than of right, seized upon this court's comment that it would constitute contempt for the bank not to turn over estate property in response to a proper turnover complaint filed by the trustee[9] and remanded the case to this court with instructions to determine whether granting the Farmers State Bank the proceeds of sale of lot 38 would grant it more than its balance due on the note underlying the security agreement.[10]

The relief which the trustee thus requested, in asking the district court to remand the case to this court—although he obviously was without knowledge of its nomenclature or the form in which the relief should be sought[11]—was relief in the form of an order requiring the Farmers State Bank to marshal liens or assets. The doctrine of marshalling liens or assets holds that:

"If a senior lienor has a lien that extends to and covers two funds or potential funds and if a junior lienor has recourse to any one of those funds to satisfy the debt due him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior lienor."

*In re Jack Green's Fashions for Men Big and Tall, Inc.*, 597 F.2d 130, 132 (8th Cir. 1979), also holding that the doctrine is properly to be invoked by a trustee in bankruptcy, when he is a junior lienor, as is the trustee in this case with respect to the proceeds of lot 38.[12] But, by the time the trustee imperfectly invoked this doctrine, the statute of limitations for his doing so had already run out. For the authorities agree that the trustee's power to invoke the doctrine of marshalling of liens or assets arises under section 544 of the Bankruptcy Code, see *In re Wholesale Center, Inc.*, 759 F.2d 1440, 1447, n. 20 (9th Cir. 1985), and section 546(a)(1) of the Bankruptcy Code limits the trustee's power to

7. As observed above, note 3, *supra*, it developed that the collateral about which the trustee was complaining was collateral on which it had already foreclosed as of the date of bankruptcy. Unless, therefore, brought into the estate as a fraudulent transfer under the rule of *In re Hulm*, 738 F.2d 323 (8th Cir.1984), and its progeny, the property is simply outside the bankruptcy estate and the trustee may not compel a redetermination of its value beyond what the foreclosure price was. "In this respect it should be remembered that (the statute dealing with valuation of securities) deals with creditors who are at the date of bankruptcy 'secured creditors' ... This has been held to exclude from its application the cases of creditors who realized on their security prior to the institution of bankruptcy proceedings, e.g., by foreclosing and bidding in on a mortgage, and, after securing a deficiency judgment before a petition in bankruptcy is filed, present a claim for the alleged and adjudicated deficiency as an *unsecured* claim. These cases are, it is said, outside the scope of (the statute) because the creditor is no longer a 'secured creditor.' (The statute) presupposes that bankruptcy intervenes at a time when the bankrupt may still be said to hold some interest in the security. If this interest vanished prior to the filing date and the creditor thus became 'unsecured,' the bankruptcy court, in the absence of fraud or collusion, may not direct the question of the proper value of the vanished security to be relitigated." 3 Collier on Bankruptcy para. 57.20, p. 364 (14th ed. 1977).

8. The district court used the doctrine of "promissory estoppel" rather than *res judicata*.

9. As observed above, note 3, *supra*, this comment was made at a time when this court was under the misapprehension that the other value which the trustee was complaining about was value which had been the subject of postbankruptcy foreclosures. But, in reality, they were the subject of prebankruptcy foreclosures. See note 7, *supra*.

10. Given the principle set out in note 7, *supra*, there could be no proof of that and, to date, there has been no such proof.

11. See note 5, *supra*.

12. Again, however, where the property had been foreclosed before the date of bankruptcy, the trustee was without power to compel the court to credit against the balance due anything but the foreclosure price. See note 7, *supra*.

seek such relief to the two years next following his appointment,[13] a time period which had long since run out by the time the trustee had begun the briefing process on the appeal from the initial judgment issued by this court.[14]

Nevertheless, this court, in accordance with the instructions of the district court, computed the deficiency which existed after the Farmers State Bank had foreclosed on the collateral other than lot 38. Subtracting the foreclosure prices from the balance initially due, this court issued its order on July 5, 1985, directing the trustee to pay the sum of $60,157.66 plus contractual interest from May 3, 1984, to date of payment to the Farmers State Bank. Using the foreclosure prices as the value of the foreclosed property was dictated by the above authorities which forbid the bankruptcy court, absent a timely complaint sounding in fraudulent conveyance or preferential transfer, as indicated above, from redetermining the value established at the foreclosure. "(I)t is well established that in a suit to recover a deficiency, after foreclosure of real property under a deed of trust, the measure of liability is ... that the sum for which the mortgaged premises were sold, so long as the sale stands, be taken as a conclusive test of the value of the mortgaged premises; the price realized at the sale, whether it be more or less than is required to pay the amount due, being the only known legal standard of value." *Reed v. Inness,* 102 S.W.2d 711, 714 (Mo. App.1937). "Generally, the price for which property is sold at a trustee's sale is the basis for measuring a deficiency, provided the sale was fairly conducted." *Regional Inv. Co. v. Willis,* 572 S.W.2d 191, 192

(Mo.App.1978). Similarly, the authorities governing the issue of deficiency in respect of the doctrine of marshaling liens hold that, when the property which is subject to the senior lienor exclusively has been sold or foreclosed, it is the foreclosure or sale price which should be subtracted from the balance due to determine the deficiency.[15]

The trustee has since admitted that the decision thus rendered by the court is correct if it is the foreclosure price which should be subtracted. Again, however, the trustee has appealed, now raising the contention that the value of the collateral must be determined by appraisal testimony which, he asserts, would, if permitted by the court, eliminate the $60,157.66 deficiency found by the court to exist. On October 1, 1986, the district court rejected this contention and entered its order affirming the decision of this court.[16] The trustee then filed a motion for reconsideration, which still pends before the district court. The trustee continues, during the pendency of that motion, to refuse to obey the order of this court to pay the sum of $60,157.66 plus appropriate interest to the Farmers State Bank.

But the mere pendency of an appeal is in no way an impediment to the operation and effect of a bankruptcy court judgment or order. "The filing of a petition to review an order of a Referee in Bankruptcy in no way serves to stay its effect or operation." *In re Stratford Financial Corp.,* 264 F.Supp. 917, 918 (S.D.N.Y.1967). See also *In re Royal Properties, Inc.,* 621 F.2d 984 (9th Cir.1980); *Matter of Kimberling Inn Resort and Vacation Club,* Civil Action No. 81–5058–CV–SW (W.D.Mo. Oct. 5, 1981) ("Since appellant did not seek a stay

---

**13.** "An action or proceeding under section 544 ... of this title may not be commenced after the earlier of (1) two years after the appointment of a trustee under section 702 ... of this title; or (2) the time the case is closed or dismissed." Section 546(a) of the Bankruptcy Code.

**14.** The debtors' voluntary petition was filed on December 29, 1980. A trustee was appointed on December 30, 1980. This court's initial decision was rendered on October 18, 1982. The record was transmitted on appeal to the district court on November 23, 1982.

**15.** See note 7, *supra.* The court, on the assumption that there still must be some postbankruptcy collateral, included in its order of July 5, 1985, the caveat that the Farmers State Bank must turn over to the trustee any excess realized on that. But, under the authorities cited above in note 7, *supra,* and elsewhere, that principle cannot apply to the property which was foreclosed before bankruptcy.

**16.** On this basis, without any stay pending appeal, it would appear that the order of July 5, 1985, is currently enforceable.

pending appeal in this Court or the Bankruptcy Court, and since the Amended Plan of Reorganization has been substantially completed, it is hereby ordered that appellees' motion to dismiss this action as moot is granted.") Accordingly, this court now proposes to enforce the judgment which has been affirmed by the district court. The fact that the district court has affirmed the judgment and that the motion for reconsideration has now been pending for some 2 years is only one of the bases on which this court concludes that it is unlikely that the trustee will prevail on appeal.

Even more persuasive was the admission in the hearing held by the court on enforcement of its latest order, which the court held on February 28, 1987, that it would only be if the court would look behind the foreclosure prices to the appraisal values of the property that a deficiency would not exist.[17] Additionally, the trustee, in the course of the enforcement hearing, raised the issue of the correctness of the computation of the interest. But this is a new issue raised for the first time on appeal; an alternative calculation was not proposed; and the difference would appear to be immaterial, especially in the light of the further considerations concerning the disposition of the estate which are set out below.[18] No objection was timely made in this court to the evidence of the computed interest upon which the court based its judgment. It may not be raised for the first time on appeal. *Fenix v. Finch,* 436 F.2d 831, 837 (8th Cir.1971).

Further, as mentioned above, in the hearing which was held on the enforcement issue on August 22, 1986, the trustee made it clear, through his counsel, that, in order to effect the result which he desired, he would have to rely upon the decision of the United States Court of Appeals for the Eighth Circuit in *In re Hulm,* 738 F.2d 323 (8th Cir.1984), to the effect that the trustee may recover, as a "fraudulent" transfer within the meaning of section 548(a)(2) of the Bankruptcy Code, debtor's property which has been foreclosed within the year next preceding bankruptcy if the foreclosure price does not constitute "reasonably equivalent value" in comparison to the actual value and if the debtor was insolvent at the time of the foreclosure. But the trustee should have known of this rule, which had previously been announced in *Durrett v. Washington National Insurance Co., supra,* well within two years of his appointment as trustee. And, owing to his delay during the initial administration of this case, no action has been filed by him to recover a section 548(a)(2) transfer and the two-year statute of limitations on filing such an action has long since run out.[19] See section 546(a)(1) of the Bankruptcy Code.

And, even if the statute of limitations had not already expired, the trustee, in support of his contention that the property foreclosed by the Farmers State Bank had a value greatly in excess of its foreclosure price has offered only unsponsored documentary evidence of opinions which have little or no evidentiary weight and which this court, in rendering its former judgment, would have been entitled to ignore in favor of the foreclosure price.[20]

---

**17.** Counsel for the trustee recognized otherwise that no deficiency would exist. See tr. 34: "If the foreclosure sale price is used as fair market value we come up with ... a deficiency."

**18.** Interest of $19,607.66, furthermore, was the amount figured to the date of the foreclosure sale, at the contract rate, on an outstanding balance then due of approximately $349,000. Undoubtedly, under the terms of the loan, the creditor is entitled to interest until the notes are satisfied, particularly when the foreclosure, as observed above, took place prior to bankruptcy.

**19.** Cf. notes 13 and 14, *supra.*

**20.** Cf. note 7, *supra.* But, even if evidence of a price other than the foreclosure price is admissible, the "evidence" which is currently adverted to in support of a finding of a value higher than $150,000 for the foreclosed property has never been demonstrated to be admissible. The statements of the Monsons in the schedules that the land was worth $430,000 could be admissible only as an admission by them in which they parties in interest. It cannot be utilized otherwise to prove the value of the property, absent their testimony in open court and subject to cross-examination. Otherwise, the trustee adverts to depositions in state court actions (Hinder, deposition of October 24, 1982, $300,000, and Maxwell, August 16, 1982, $250,000) which

The trustee has been apprised of these principles numerous times, but still seems to be intent on developing evidence long after the trial has been concluded. In the course of the enforcement hearing of August 22, 1986, counsel for the trustee offered to adduce testimonial evidence of value. But, even if it had been offered earlier, it would still not be admissible for the reason that the trustee has wholly failed timely to file any section 547 or 548 action within the time period granted by the statutes of limitation.[21] Further, offered at this point or hereafter, the offer runs afoul of the rule that, after a hearing is concluded, additional evidence may be offered on a timely showing that such evidence has been newly discovered and in the exercise of due diligence would not have been discovered in time to be adduced at trial.[22] No such timely showing has been made in this case.

## II

■ There is a separate and independent reason why this court has determined that this prior order of July 5, 1985, should now be enforced. It remains the responsibility of the bankruptcy court to see that estates are administered properly and for the benefit of creditors rather than for the principal benefit of the trustee and his attorneys. "Clearly the purpose of the Bankruptcy Act was to benefit creditors and debtors, not trustees." *In re Kokoszka,* 479 F.2d 990, 995, 996 (7th Cir.1973), affirmed sub nom. *Kokoszka v. Bedford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974). See also *In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 373, 374 (5th Cir.1987), affirmed, —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), to the following effect:

"In almost all cases the key to avoiding excessive administrative costs, which are borne by the unsecured creditors, as well as excessive interest expense, which is borne by all creditors, is early and stringent judicial management of the case. We recognize that Congress, in 1978, amended the bankruptcy laws with the intention of removing bankruptcy judges from the administration of the debtor's estate. The purpose of this amendment was to insure the impartiality of the bankruptcy judge. We do not believe, however, that Congress thereby intended to relieve the bankruptcy judge of the responsibility of managing the cases before him in such a way as to promote the objectives and goals of the Bankruptcy Code. Our conclusion in this respect is strengthened by the fact that the bankruptcy court is an adjunct of the district court. District court judges function under Fed.R.Civ.P. 16 with full power and responsibility to manage their cases and with the directive to move their cases in such a way as to promote fairness to the parties and judicial economy. These responsibilities are not incompatible with their judicial function; indeed, they are at the core of it. We recognize that the line between administration of the debtor's estate that would jeopardize the bankruptcy judge's impartiality and effective case management may sometimes be a difficult one to draw. Nevertheless, we think that each bankruptcy judge is called upon to manage the cases in front of him, fairly and impartially, in such a way as to promote their orderly and prompt disposition. The difficulty in ascertaining where the line is to be drawn cannot be an excuse for a judge's

---

have never been admitted in evidence in these actions under the specific provision of Rule 804(b)(1) of the Federal Rules of Evidence or otherwise. And this court has dealth previously with Mr. Maxwell's testimony that he "hoped" to gain $220,000 from the lots, holding that it did not qualify as an opinion of value.

**21.** See note 13, *supra.*

**22.** "Before a new trial may be granted on the basis of newly discovered evidence, there must be a showing that the alleged newly discovered

evidence was discovered since the trial; facts from which the court may infer reasonable diligence on the part of the moving party; that the evidence is not merely cumulative or impeaching; that the evidence is material; and the evidence is of such a character that on a new trial it will probably produce a different result." *McCullough Tool Company v. Well Surveys, Inc.,* 343 F.2d 381, 410 (10th Cir.1965). The evidence adverted to in this case, in addition to not being admissible, see notes 7 and 20, *supra,* does not meet any of these requirements.

abdication of his responsibility to function as a judge."

Accordingly, the bankruptcy court is charged with the duty of preventing the trustee from depriving creditors of their lawful payments or property when such a deprivation would chiefly redound to the benefit of the trustee and his attorneys. "(T)he court should decline to permit the trustee in bankruptcy to recover ... (a)n amount that ... could only be used to pay attorney's fees for the trustee." *Matter of Melvin,* 64 B.R. 104, 107 (Bkrtcy.W.D.Mo. 1986). "(I)t is one thing to take preference payments from legitimate creditors and restore those payments to the creditors *pro rata* so that the paramount bankruptcy goal of equality of treatment is achieved. But it is quite another to collect such preferences when it is a foregone conclusion ... that they were certain to be consumed by ... expenses of administration ... and ... attorney's fees ..." *Matter of Global International Airways Corp.,* 82 B.R. 520, 17 B.C.D. 120, 123 (Bkrtcy.W.D.Mo.1988).

If the trustee is not successful in having this court's order directing him to pay the Farmers State Bank $60,157.66 plus interest overturned, the files and records in this case purport to show that there is currently the sum of $124,324.28 in the estate. The sum of $81,813.66 would have to be paid to the Farmers State Bank, the amount over $60,157.66 being accumulated interest. The chiefmost of the other claims have been objected to by the trustee, and this court concludes therefrom that he does not consider them worthy of payment. He has objected to a claim of the Estate of Russell Maurice Monson in the sum of $24,150.00 on the grounds that it has already been paid. He has also objected to the claim of the Kingston Bank in the sum of $66,097.55 and that of Ora M. Butcher in approximately the same sum, as being duplicate claims by a creditor and a guarantor, only one of which should be allowed against the estate. But, further, according to the contents of the files and records in this case, the Kingston Bank was an even greater offender with respect to the bid at the foreclosure

sale which gave rise to the deficiency underlying the claim than was the Farmers State Bank. According to the schedules, Kingston Bank was originally owed approximately $168,000 and the property in which it had a security interest was valued at $180,000. The bid of the Kingston Bank at the foreclosure sale was "about $100,-000," thus leaving the deficiency of $68,-000. Although the trustee, again, is out of time in seeking to recover the excess value for the estate, it appears that, under the governing law, the guarantor, Ora M. Butcher, may cause the Kingston Bank to account to the guarantor for an unreasonably low disposition of the collateral. "(T)he law imposes on the creditor an obligation not to deal with the debtor, or any security for the debt, in such a manner as to harm the interests of the guarantor. Thus, where the creditor wrongfully cancelled a security interest which should have been transferred to the guarantor following payment of the secured obligation, the creditor was held liable to the guarantor for the guarantor's loss." 38 Am.Jur.2d *Guaranty* section 126 (2d ed. 1968). Accordingly, when the property has value which should protect the guarantor as well as the creditor, it does not appear vital that estate administration be continued in order to allow a duplicate claim. This is especially so when, as observed above, the trustee has now sat out the time limitations within which he should have brought any desirable suit to recover the value of the $180,000 in collateral.

The same principle appears to apply in the instance of the claim of Ora Butcher which is filed in the amount of $42,026.85. According to the face of that claim, it was secured, not only by lot 38, but also by lots 1 and 2, in which the trustee has consistently claimed that there is a great excess of value, but with respect to which, he is out of time now to claim in the ordinarily recognizable manner.[23]

Thus, omitting those claims which the trustee himself appears to contend are ob-

---

**23.** And, if the trustee's current arguments concerning the value of lots 1 and 2 are to be given any credence, their value should almost cover the $42,000 claim.

jectionable, there would be some $36,492.44 in other claims which could easily be paid with the approximately $40,000 which would remain on hand after payment of the Farmers State Bank.

The trustee, however, has requested that the decisions on claims await the final determination on appeal of his controversy with the Farmers State Bank, apparently so that he may resolve any question about the validity of the claims by simply paying them. This has not been advisable, in view of the considerations which have been set out above.

If the trustee should succeed in his suit on appeal—and it seems unlikely at this point that he should do so, a great excess of funds would be achieved for the estate. According to the foregoing considerations, it would be in the vicinity of some $80,000. Upon whom would this largesse be bestowed? If the trustee's answer should be that it should be paid wholly or in part to him or his attorneys, then the continued administration of the estate could in no way be pardonable, and the manner in which the estate has been administered could be said to be truly scandalous.

If it should be said that the excess should be paid over to the debtors, it must be observed that this course seems unlikely to serve the ends of justice when the trustee has failed even to test the debtors' right to a discharge over and against the appearance that they may have violated section 727(a)(2) of the Bankruptcy Code in making the prebankruptcy transfer to Ora Butcher on June 6, 1980, within a year next preceding the date of bankruptcy, December 29, 1980.

This combination of facts and circumstances—(1) the length of time which the motion for reconsideration of the affirmance on appeal appears to diminish the likelihood that the judgment of this court will be reversed on appeal (2) the trustee has not timely or properly applied for such relief as would enable him to recover the excess value of the property which he claims to exist; and (3) the constellation of claims makes it appear that further to administer the estate would be not in accord-

ance with the ends of justice—compel this court to act in the absence of any meantime ruling by the district court. It is therefore, accordingly,

ORDERED that the order of this court of July 5, 1985, be abided by the trustee in bankruptcy and that he accordingly pay the sum of $60,157.66 plus interest at 9% per annum from May 3, 1984, to the Farmers State Bank, within 25 days of the date of filing of this order.

## ON MOTION TO SET ASIDE ORDER OF BANKRUPTCY COURT DATED APRIL 20, 1988.

Formerly, on April 20, 1988, this court issued its written order enforcing its former order of July 5, 1985, directing the trustee to make payment to plaintiff in the sum of $60,157 plus interest at 9% per annum from May 3, 1984, until the date of payment.

On May 4, 1988, the defendant filed a motion to set aside the order of April 20, 1988, on the ground that "the bankruptcy court has no jurisdiction to issue orders relating to the exact subject matter which is on appeal and/or the bankruptcy court may not, on its own, enter an Order enforcing its previous judgment." The motion must be denied on the separate and independent grounds (1) that the motion was untimely and (2) that the motion is without merit as a matter of law. In view of the defendant's disinclination to comply with the order, furthermore, this court must take immediate, extraordinary measures.

I

*Untimeliness of the "motion to set aside"*

The Bankruptcy Rules require that motions to alter or amend an order or to reconsider it or set it aside be served within 10 days of the judgment or order complained of. See Bankruptcy Rule 9023. In the instance at bar, the matter was neither served nor filed until May 4, 1988, fourteen days after the entry of the order complained of. The motion must therefore be denied, for this court has no power to extend the time for the service or filing of

such a motion. See Rule 9006(b)(2) of the Rules of Bankruptcy Procedure.

## II

### *Absence of legal merit in the proposition that an appealed order cannot be enforced*

■ Further, even if this court could entertain such a motion, the motion at bar must be denied as being without legal or factual merit. The case decisions upon which the defendant relies to assert that the court has no power to enforce its former judgment while on appeal is pending therefrom are those which simply state the rule that the lower court may not modify or annul an order after it has been appealed from.[1] The same cases recognize the principle that a bankruptcy court may enforce its order pending appeal, unless a stay has been granted pending appeal.[2] "The general rule that a properly filed notice of appeal deprives the trial court of jurisdiction to proceed further does not apply in bankruptcy proceedings." *Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 334 (9th Cir.1978). It is true that the bankruptcy court, like any trial court, is divested of authority to modify or annul the order or judgment appealed from, and that jurisdiction is transferred upon the

taking of an appeal to the appellate court "with respect to such matters, except in aid of the appeal, or to correct clerical mistakes, or in aid of execution of a judgment that has not been superseded, until the mandate has been issued by the court of appeals." *Matter of Thorp*, 655 F.2d 997, 998 (9th Cir.1981). But, with respect to enforcement, the law not only permits, but encourages, bankruptcy courts and trustees to enforce unstayed orders pending appeal. "It is settled law that the filing of a petition to review an order of a bankruptcy judge (formerly a referee in bankruptcy), does not stay the effect on operation of the order unless a supersedeas bond is filed or the order itself provides for a stay." *In re Abingdon Realty Corp.*, 530 F.2d 588, 589 (4th Cir.1976). "The Trustee in a bankruptcy proceeding is expected and encouraged to proceed with administration of the estate after the entry and during the appeal of an order of adjudication." *Matter of Christian & Porter Aluminum Co., supra*, at 334.[3] This is especially so in the type of case at bar, in which, as will be further pointed out below, compliance with order of July 5, 1985, is necessary both to serve the ends of justice and to conserve the monies of the estate which appear to have been invested at interest rates which are exceed-

---

1. The decisions which are cited by the defendant are either cases which restrict their prohibition of activity by the lower court to a prohibition against modifying or vacating the order on appeal, and all recognize either explicitly or by implication the principle that, absent a stay order or supersedeas bond, a bankruptcy court order or judgment may be enforced pending an appeal from it. The rule is succinctly stated in *In re Bialac*, 694 F.2d 625, 627 (9th Cir.1982), as follows: "Even though a bankruptcy court has wide latitude to reconsider and vacate its own prior decisions, not even a bankruptcy court may vacate or modify an order while on appeal." "We are of the opinion that no lower court should be able to vacate or modify an order under appeal, not even a bankruptcy court attempting to eliminate the need for a particular appeal." *Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 201 (9th Cir.1977). Nevertheless, "[i]t is settled law that the filing of a petition to review an order of a bankruptcy judge (formerly a referee in bankruptcy), does not stay the effect or operation of the order unless a supersedeas bond is filed or the order itself provides for a stay." *In re Abingdon Real-*

*ty Corp.*, 530 F.2d 588, 589 (4th Cir.1976). The compatibility of the two rules is demonstrated by their appearing side-by-side in several of the decisional authorities cited and relied on by the defendant. *See Matter of Christian & Porter Aluminum Co.*, 584 F.2d 326, 334 (9th Cir.1978) ("The general rule that a properly filed notice of appeal deprives the trial court of jurisdiction to proceed further except by leave of the appellate court does not apply in bankruptcy proceedings.... The trustee in a bankruptcy proceeding is expected and encouraged to proceed with administration of the estate after the entry and during the appeal of an order of adjudication."); *Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 194, 200 (9th Cir.1977). None of the cases cited and relied on by defendant goes any further than to hold that an order may not be vacated or modified during the pendency of an appeal therefrom. *Matter of Thorp*, 655 F.2d 997 (9th Cir.1981), *In re Robertson*, 51 B.R. 20, 21 (Bkrtcy.D.D.C.1984).

2. See note 1, *supra*.

3. And see note 1, *supra*.

ed by the interest rate which is to be paid to the plaintiff.

## III

*Absence of factual merit in the contention that the order of April 20, 1988, purports to decide the issues which are pending on appeal*

Nor can it be true, as the defendant now contends, that this court, in its order of April 20, 1988, purported to decide the issues which are now pending before the appellate tribunal. This court, rather, only made findings to the effect that there was not a distinct likelihood that the defendant would prevail on that pending appeal, as it is the designated office of this court to do in determining whether it should grant any stay pending appeal under Bankruptcy Rule 8005. "Without a substantial indication of probable success on appeal a court should not issue a stay as there is no justification for a court's intervention into the normal processes of administration ..." *In re Porter*, 54 B.R. 81, 82 (N.D. Okla.1985), and cases therein cited. So this court observed that the district court had affirmed the decisions of this court; that the defendant's motion for rehearing of that decision had been pending for more than a year; and that, without the timely filing of the adversary complaints which were necessary to invoke the doctrine of *In re Hulm*, 738 F.2d 323 (8th Cir.1984), or the doctrine of marshaling liens, the defendant could not, under normal expectations, hope to prevail on appeal. Thus, there was not such an indication of probability of success on appeal that this court should have forbore enforcing its order of July 5, 1985, and instead granted a stay pending appeal.

## IV

*The pendency of the motion for rehearing on appeal, under the letter of the Bankruptcy Rules, has no staying effect*

Under the governing provisions of Bankruptcy Rule 8017(a), when the judgment of the district court was rendered on October 1, 1986, affirming the order of July 5, 1985, that judgment was "stayed until the expiration of 10 days after entry, unless otherwise ordered by the district court." No further stay was granted by statute or rule. It was incumbent, rather, upon defendant to have filed a motion for stay pursuant to Bankruptcy Rule 8017(b) pending appeal to the court of appeals, the duration of which would be limited to 30 days after judgment "unless the period is extended for cause shown." If the stay were to be further extended, it was incumbent upon the defendant before the temporary stay period ended, to file a notice of appeal to the court of appeals in which case, "the stay shall continue until final disposition by the court of appeals."

■ Rather than file any notice of appeal from the district court judgment, however, the defendant filed a motion for rehearing pursuant to Bankruptcy Rule 8015, a motion as to which it is wholly within the discretionary power of the district court to accept and rule on, or to refuse to do so, for that rule provides that the district court may "by court order" provide "otherwise" than that the motion for rehearing may be filed. And its pendency, as observed above, has no staying effect upon the district court judgment with respect to which the motion for rehearing is filed.

In fact, it appears that, under the version of Bankruptcy Rule 8015 which was in effect at the time this case was filed, the defendant's inaction in filing a notice of appeal to the court of appeals may have caused that right of appeal to have been irrevocably lost. Under the version of Rule 8015 which was then in effect, according to the Advisory Committee Note:

"[t]he filing of a motion for rehearing does not toll the time for taking an appeal to the court of appeals from the district court or the bankruptcy appellate panel ... Rule 4, F.R.Civ.P. does not ... contain any provision which stays or otherwise alters the time for taking an appeal to the court of appeals when a motion for rehearing is filed under Rule 8015 with the district court or bankruptcy appellate panel."

Rule 8015 has in this respect been amended, effective August 1, 1987, to provide that "[i]f a timely motion for rehearing is filed, the time for appeal to the court of appeals for all parties shall run from the entry of the order denying rehearing or the entry of a subsequent judgment." But that amendment is to have effect on cases commenced after August 1, 1987, and prior cases may be affected only "insofar as just and practicable." When an amendment either creates an appeal where none previously existed or the appeal time has previously expired, it is ordinarily held that it would be unjust and impracticable to apply the amendatory provision retroactively. See, e.g., *In re Reilly,* 442 F.2d 26, 28 (7th Cir.1971), considering amendatory legislation which would have authorized judicial review of a decision of the Railroad Adjustment Board which was already final:

> "We feel that the District Court correctly stated the law in holding that amendatory statutes generally operate prospectively only absent a strong indication of legislative intent to the contrary. We note here that the Legislative History accompanying the 1966 amendment is silent on the question of Congress' intent on this matter ... And we also note that this amendment, dealing as it does with the right to appeal, might arguably be considered 'relating merely to the remedies and forms of procedures.' But that does not answer the entire question.
>
> "The amendment created substantial changes in the earlier procedures and, if given retroactive effect, would have a substantial effect on the earlier action of the Adjustment Board. As was stated in Aetna Casualty and Surety Company v. Industrial Accident Commission, 30 Cal. 2d 388, 182 P.2d 159—'If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effect of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary

clearly appears.' Quoted also in Koster v. Warren, 297 F.2d 418 (9th Cir.1961) ... [T]he central point is that the matter, as of the time of the Board's action, was closed and became final."

## V

### *The trustee is protected in the event of reversal on appeal*

Ordinarily, as the court pointed out in its order of April 20, 1988, the performance of an unstayed order in bankruptcy moots the appeal therefrom.[4] The defendant now nevertheless complains, citing the case of *In re Combined Metals Reduction Co.,* 557 F.2d 179 (9th Cir.1977), that "[i]f no supersedeas bond is posted, and an appellee executes on a money judgment, he does so under the risk that he will have to refund the judgment if it is reversed on appeal." But the same decisional authority is to the effect that a trustee is ordinarily protected from liability or other adverse judgment when he acts in accordance with an order of court. See 557 F.2d at 194, n. 11.

Further, even if the trustee should eventually prevail on the pending motion for rehearing, it is staple and fundamental that distributions made prior to the final distribution in a case remain subject to recovery by the court and trustee under appropriate circumstances. See *Lilyknit Silk Underwear Co., Inc.,* 73 F.2d 52, 54 (2d Cir.1934) ("In the exercise of a duty imposed by the bankruptcy law, the trustee may invoke such general principles as are applicable ... Among them is the power to require restitution of what has been taken by enforcement of a judgment subsequently reversed."); *United Properties, Inc. v. Emporium Department Stores, Inc.,* 379 F.2d 55, 71 (8th Cir.1967) ("[I]f the confirmation [or other order of distribution] is reversed by a higher court, it will be the trustee's duty ... to recover from the payee the monies paid to them as a result of distribution, and to bring the money so paid back into the estate."); *Matter of Ald-*

---

4. As there observed, our district court has previously observed this rule in *Matter of Kimberling*  *Inn Resort and Vacation Club,* Civil Action No. 81–5058–CV–SW (W.D.Mo. Oct. 5, 1981).

*ersgate Foundation, Inc.,* 51 B.R. 380, 382 (Bkrtcy.M.D.Fla.1985) ("There is authority to support the proposition that the Trustee is not personally liable in the event he distributed the funds on hand pursuant to an order of distribution and he is unable to recover the dividends if the order ... is reversed ... [if] the Trustee ... attempt[s] to recover the improperly paid dividends.")

In fact, the trustee is more likely to be personally liable for *failing* to comply with the order of July 5, 1985, than he is likely to suffer personal liability for *complying* with it. "When a trustee has breached his trust, an equity court may hold him liable for any loss or deprivation in the value of the estate resulting from the wrongful act or omission." *Matter of Combined Metals Reduction Co., supra,* at 197. As observed above, under the order of July 5, 1985, the trustee is to pay 9% per annum interest from May 3, 1984, to the date of payment. Indications are that he currently has the funds of the estate invested at an interest rate lower than 9%, so that his continuing to hold the monies is making significant inroads on the amount of monies which constitute the general fund of the estate. Consequently, if there develops a shortage of funds to pay dividends and that shortage is wholly or partially attributable to the refusal to comply with the order of July 5, 1985, although it was never stayed, the trustee may possibly be liable in surcharge for it.

On the other hand, payment to the plaintiff can be recovered, under the foregoing authorities, if the order of July 5, 1985, is reversed, at the same 9% interest rate which the plaintiff has contractually invoked. Under such circumstances, the court cannot stand idly by to permit the parties' rights to be unnecessarily delayed, and perhaps irremediably so, and the trustee to incur the potential personal liability of a surcharge.

## VI

### *The court has the power to act on its own initiative*

■ Nevertheless, the defendant contends that the court may not enforce the order of July 5, 1985, on its own initiative; that he is free to handle the monies of an estate as he sees fit without supervision or intervention of the bankruptcy court. As doubtful as that general proposition is in the abstract, it can hardly be true under the circumstances of this case as outlined in the order of April 20, 1988, and above in this order. Further, the courts have repeatedly approved enforcement of judgments under Bankruptcy Rule 7070 and its counterpart, Rule 70, F.R.Civ.P., by courts acting on their own motion. See, e.g. *In re Snyder,* 22 B.R. 29 (Bkrtcy.E.D.Tenn.1982); *Gary W. v. State of Louisiana,* 622 F.2d 804, 806 (5th Cir.1980); *TNT Marketing, Inc., v. Agresti,* 796 F.2d 276, 278, 279 (9th Cir.1986) (A court may invoke rule 70 sanctions on its own motion, in lieu of relief otherwise requested, provided that sufficient notice is given to the party against which sanctions are to be applied.) Rule 7070, and its counterpart, Rule 70, F.R. Civ.P., pertinently provide that:

"If a judgment directs a party to ... perform any ... specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has the effect as if done by the party ..."

Such a power would seem to be appropriately exercised in this case unless the trustee, after having been given the notice of this court's intention to exercise it, complies within 15 days with the order of July 5, 1985, or else procures an order from the district court which nullifies its effect. And further, such a power would seem to be comprehended within a bankruptcy court's well-established power to remove a trustee, which power is said to be exercisable by "the court on its own motion." 2 Collier on Bankruptcy ¶ 324.01, p. 324–3 (15th ed. 1988). If there were currently an administrator overseeing the operations of trustees in this district, such as a United States trustee (who has not yet commenced operations in this district), the court would prefer not to exercise such a power on its own initiative. But the exigent and ex-

treme circumstances of this action leave the court little alternative except to take the action which it now proposes to take.

The court apologizes to the trustee and his attorneys if they somehow read this order and that of April 20, 1988, as in some manner impugning their competence or character. The court has only attempted to portray what has been done—and failed to be done—so that an appropriate course of action may be followed.

It is therefore, for the foregoing reasons,

ORDERED that the "defendant's motion to set aside order of bankruptcy court dated April 20, 1988" be, and it is hereby, vacated and set aside. It is further

ORDERED that, unless, within 15 days of the date of filing of this order, the trustee either complies with the order of July 5, 1985, or else procures an order of the district court nullifying its effect, the court shall, under Bankruptcy Rule 7070 and Rule 70, F.R.Civ.P., appoint another person to perform the act necessary to comply with the order of July 5, 1985.